Dario DeGataldi, May it please the Court, here for the County of Santa Cruz, County of Sonoma, County of Marin, County of San Diego, County of Santa Barbara. All right, well, don't waste the time. Are you here for the doctors, too? No. Yes, Your Honor, in the sense that this was filed as a class action. Is it a class action? It has not been certified yet. It was dismissed. So, at the moment, you are not representing the doctors? No, Your Honor, other than the employees of the counties who are physicians, who bill through Medicare, just like doctors and private doctors. You're here as a health care provider, the county as a health care provider? Yes. Don't equivocate. Are you here as the county, or are you representing any doctor? We're not representing any individual doctors. We're representing the counties who provide medical services and bill through Medicare Part A. Well, are you representing the doctors who bill through whatever it is you're talking about? Are you representing only the counties as an entity, or the doctors? Only the counties so far, Your Honor. And that leads me to a question that struck me as decisive. What property interest does the county have? The county has employees, doctors and other health care practitioners who bill through Medicare. That is the county. But that's their property, not the county's. No, because, Your Honor, respectfully, they're county employees. How does that make a difference? Because it's the counties that do the billing. And the doctors and other health care practitioners are paid a salary by the county. And the county is the one that collects the reimbursement from Medicare. It's not the county's money. It's the employee's money. Respectfully, no, Your Honor. It's the county's money. Okay. Let's say it's the county's money as the health care provider. The question, then, is what is their property interest in having this calculated in a certain fashion? There are cases, Your Honor, that say there's no property interest in having the reimbursement calculated in a specific fashion. However, what we have here is a very unique situation. We have a situation where since 2001, Medicare has been aware that they are overpaying suppliers, is the term of art, statutory term of art. They are overpaying suppliers in some counties and underpaying suppliers in others. In violation of the statutory requirement, well, that's your sort of statutory argument. I'm trying to get to your constitutional one. If you don't have property, it doesn't make any difference whether you're a person or not. You have no property rights to defend. The property right, Your Honor, is the right to have proper payment where you have a property right, where you have an admission, a repeated admission from 2004, 2005, 2006, by Medicare, that they are overpaying doctors in some counties. Doctors. If you had the doctors as a class, you'd have a case. But you don't have the doctors. You're just here as a county. Technically, Your Honor, we're here on behalf of suppliers. Technically, that's the reason that we're looking at this. We don't want to at least I don't want to get into whether you're a person or not when you don't have any property. Okay. I understand. There's nothing to protect. Understood. We're here on behalf. There's nothing to protect constitutionally. We are here on behalf of suppliers. No, no. You're not on behalf. No, it's not been certified. You're here as a county. Okay. But the county is a supplier, as defined under Medicare Part B. You're not being reimbursed for any service of the county. It's a service of your own. Well, I think you've got a very hard case on that. Your constitutional case. But you can get your money, as I understand, you can get your money either kind of straight up, you get the fixed amount that they give you, or I assume the county can also take the 80 percent and have the patients pay the remaining 20 percent. That's what happens for all Medicare beneficiaries, Your Honor. So what I'm trying to understand, though, is what statute you base the right on. Well, it is 1395 W-4, and I believe that it is subdivision E, which requires that the reimbursement be calculated so that the local costs relative to the national average of costs is the reimbursement amount. Right. But that all is predicated on how you define the local area, no? Yes. Yes. Okay. That's right. So we come back to this local service area? Is that what it's called? I'm sorry. It's called the local service area. What's the word again? Fee schedule area. FSA. Fee schedule area. Right. Or locality. Locality. Thank you. So it's right. And so what's happened here is that the locality structure has not changed since 1996. And I'll focus on California. In California, there are nine. Well, are we through with Judge Newman's question about whether you have any property interest? Maybe not. Okay. I thought that's what you said. According to the complaint, which is treated as factually true for purposes of a motion dismissed, I believe that we've asserted that the county has the right, the county and not the doctors, the employees of the county, has the right to the reimbursement from Medicare. And I believe that the standard, at least in the Furlong case, is for the determination of a property interest, is whether there is a legitimate claim of entitlement. And I believe that we've satisfied that burden by showing that Medicare has acknowledged that they are underpaying the physicians in almost hundreds of thousands of dollars in Medicare.     The county has not paid the physicians. They're not underpaid. They've got a claim for the physicians, but not for the county. Are they underpaying the county is the question. And underpaying the county as well. Yes, Your Honor. They're county employees. Right. The payments go from Medicare directly to the counties. And do the counties retain any of those payments? Yes, Your Honor. They pay salaries to the doctors who are their employees. These are county health facilities. Yes. Where people go and they sign up and the doctors happen to work there. Right. But the money goes to the county because the county is like the hospital or the mental health facility or the whatever, the whatever, right? Or Sutter or Kaiser or whatever. Yes. So if they retain something, it's for their facility. The money that's meant for the doctors goes to the doctors, I assume. No, Your Honor. The doctors get a salary. All right. The doctors get a salary from the county. This is income to the county. It's like a business. And the county bills to Medicare. Are you saying the doctors, the county underpays the doctors? No. The doctors have no disagreement with their salary from the county. It's the county that's losing the money. Because the county sets the salaries. Yes. But it only sets what they get from Medicare. Is that right? No, that's not correct. Well, why don't they supplement the salaries if they think they're underpaid? The doctors, the county employee doctors are not saying that they are underpaid. It's the county that bills Medicare that is being underpaid. But the county rents a hospital, right? The county has clinics. They have hospitals, yes. And they're entitled to compensation for the services that are provided. Of their employees, yes. And you're claiming that the property you're entitled to, the money you're entitled to, you're not receiving what you should in funds. That's right. That's right. Have I answered your question? And the reason for that, though, goes back to the to how they define localities. These localities. Yes. And that has not changed since 1996, even though the demographics have changed significantly. That's why I kind of have a collision with your property right, because it's basically you really want to say you have a right to have it determined in a certain way. That's your property right. I mean, I know at the outcome, if you squeeze it out of the tube, it's just money. And you think it should be higher. And right now Medicare people say it's no, it's X. So I'm having some disjunction between why what you're really claiming is a right to have it calculated versus a property right. Okay. I think that the difference here in this case from the other cases that involve physicians, the American Medical Association, who asserted a property right under the Medicare fee schedule, is that in this case we have acknowledgments, repeated acknowledgments by Medicare, that they are underpaying. They know this. They have said this over and over again in the Federal Register. It's an admission. There's nothing like that admission in the other cases that have been cited. This is unique. And as a result of the averaging process that goes on, doctors in San Diego County. Now, we understand the problem. This all boils down to legal questions. Okay. So you're saying that really it's the acknowledgment in the Federal Register that gives them the property right. Right. What's your support for that? That's pretty unique. Well, I've never seen a case like this, Your Honor. But, I mean, it doesn't have to be a Medicare case. It could be some other case. Well, I haven't. I do not have any case support for it because I know of no other case where the government has admitted that they're underpaying people. I mean, so I have not any case citation for the Court. Okay. I have some other questions that really relate to the statutory nonreviewability issue.   Does the fee schedule area boundaries play any role except in ultimately ending up with the geographic adjustment factor? The geographic adjustment factor is a combination of two things. It's a product. It's a mathematical product of something called the GIPC or the geographic practice cost index. Right. And the RVUs or relative value units. The RVUs are national in scope. And it's the GIPCs, the geographic practice cost index, that is a measurement of local costs relative to the national average. And in order to get that, you have to know what geographic boundary you're benchmarking. Exactly. That is true. That is true. So then that brings me back to my question. This geographic boundary, the FSAs, and they're defined in some other section or regulation. Their only and real function is to be the foundation for determining one of the factors that goes into the gap. I wouldn't exactly agree with that, Your Honor. The way that I look at it is that the GIPCs or the gaps are a measuring device. And then the localities are the thing that's being measured. And so you can use a measuring device on any number of different things. But the things don't just exist. But it doesn't have any other. Maybe I'm not being precise enough in my question. Does it have or is it used anywhere else from a regulatory standpoint other than to segue into the gap, No, it's not. But let me point out something that is very similar in this fee schedule. And that is the relationship between the relative value units and the practice codes. The relative value units and the practice codes are both defined in subdivision C, I believe. And just like with the gaps and the localities, you have the RVUs measure the relative value of the work and costs that go into performing one of the 10,000-plus things that a doctor can do, the practice codes. And so you might say that the practice codes have a very similar relationship to the RVUs as the relationship between the localities and the gaps. However, Congress in 1395 W-4I provided separate subsections that said there's no judicial review of the RVUs and there's no judicial review of the practice codes. And so if one would think that if Congress had intended to preclude judicial review of the fee schedule areas, then they would have expressly done so, just like they did with the practice codes. I thought there was also, though, a case involving the conversion factor. And there was a foundational element of the conversion factor that was found to be nonreviewable. Is that the AMA case? Yes. Okay. Right. But that case had sort of two parts. There was a direct attack on the conversion factor, I believe, which is there's an express prohibition of judicial review in subdivision I-1C. But there was also a question about what's called the sustainable growth rate, the SGR, which didn't come onto the scene, actually, until 1998. And the plaintiffs in American Medical Association said that the SGR was reviewable. However, the trial court there did not, for some reason, reach that question. AMA said it was reviewable because it was not in place in 1989 when Congress enacted the fee schedule. It didn't come onto the scene until eight or nine years later. And so how could Congress have intended to foreclose judicial review? Unfortunately, the trial court did not reach that issue. So do you want to save the rest of your time or do you? Yes, I would, Your Honor. Thank you. Thank you. Thank you. May it please the Court, Katherine Hancock on behalf of the Secretary of Health and Human Services. As the panel's questions have asked about the property interest here, I'd like to address that first. Did you brief the property interest question? We did, Your Honor, at the very end as an alternative basis for affirming the district judge's opinion here. I think it's on the last page or two of our brief. As we indicated there, there's no protected property interest. Certainly not in your table of contents, is it? It's not a separate subsection, Your Honor, of the brief. It's at page 38 of the brief. It starts, in any event, this Court need not resolve the constitutional issue because you can affirm on the basis of the fact that there's no protected property interest here, certainly not above the amount set in the fee schedule. When the counties perform these services, they have notice of the published fee schedule amount before the services are performed, and there's nothing here, no protected property interest, to receive any compensation above that published amount. And if they don't have a constitutional claim because they have no property, do they even have standing to raise the other claim, the statutory claim? Not to recover any amount above the fee schedule limit, which is what they're asserting. If they have, it gives them a statutory right to come in and claim property, is it? That's correct, Your Honor. Well, they have they're in the system. So even if they didn't have a due process property right, we'd have to untangle all their statutory claims as to whether there's a statutory violation here, wouldn't we? And they certainly would have standing. Well, what's their standing for that claim? They would have standing as a provider under the maze of statutes. Oh, but I think what Judge Newnan was getting at, Your Honor, is that their standing would be based on the harm they would be alleging is their underpayment, which would be based on this asserted property interest that they allege is either in the statute or and there's nothing in the statute that provides them payment to an amount greater than provided in the fee schedule. Do they, let me just ask you, if they wanted, we have this weird situation where they say, okay, they're underpaid, and the Secretary apparently says in some instances there's underpayment. How do they challenge that? How do they get paid the amount they should get paid? I mean, what can they do? Because you say they need to take it through the system, but when they try to take it through the system, the people there say, wait, there's no system to take it through. Well, two responses, Your Honor. The first is they could have exhausted administrative remedies. Here, again, if they had properly presented the claim, they would have ended up with the result that the agency would have told them they couldn't challenge these fee schedule areas. Their other option is, of course, to take it up with their State and Congress. And here, part of the problem in setting these localities is any time the agency were to redefine the fee schedule areas. Let me just go back to exhaustion. Exhaustion would basically be meaningless because they would end up being told there's nothing to exhaust. If they are challenging the definition of the fee schedule areas, that in the end there would have been no judicial review, administrative or judicial review. So that you say that no matter what they do, nobody can challenge it because when you come into the system, you take whatever there is. So nobody can ever challenge what the government does, no matter how arbitrary or unreasonable, whether they violate the statute or not. There's no challenge. Because you're going to take whatever the fee schedule is. Well, because the ñ well, and Congress has ñ that's correct, Your Honor, in essence, here, because the ñ there's the fee schedule amount, and then there is specific provision prohibiting judicial and administrative review. And there is also no AP. Well, you don't even need that, do you? I mean, your position is that when you come in and take a fee schedule, when you come into the system, you take whatever the fee schedule is. Yes. But, I mean, Your Honor, if they had a claim that perhaps the ñ when they were reimbursed, it was miscalculated according to the fee schedule, and so they were mispaid because the person who reimburses them somehow miscalculated the amount they were due, they could bring that kind of claim and exhaust that through the system. I'm saying no matter how arbitrarily the government acts in establishing the Medicare payments, nobody has a right to complain about that. Well, to complain about the way these localities ñ No, you can complain to your congressman. I'm sorry, Your Honor? You can complain to your congressman, but otherwise it doesn't matter how you establish a fee schedule, because when you join Medicare, you know there's a fee schedule and you take whatever it will be. Well, for that particular year, the fee schedule is updated every year. But the geographic adjustment factors are updated every three years. Is that right? The geographic adjustment factors have to be reviewed every three years. That's correct. So let's say the secretary didn't review them. Would they have a claim for that, or would they have a claim if the other things weren't done on schedule? That might be a much closer case, whether a different situation where they could bring a claim saying the secretary failed to perform a specific statutory duty. Here there's no duty to revise or revisit the fee schedule areas. Well, I don't understand why that means it's not a violation of the Due Process Clause if they're persons. Why is it ñ it's because you're looking at the statutory construction or the statutory provisions, and that's why there's no constitutional right? There's no constitutional right because the counties are not persons and there's no property. No, this is if they are persons. Okay. If they are persons, why is there no constitutional right? Because there's no protected property interest that they can identify that gives them a right to receive money greater than is established in the fee schedule. At most, that's the property right they would be able to identify. Several other cases that we cite in our brief, the Cataract case and Painter, have agreed. At most, there's a protected property right to receive what the amount that is designated in the fee schedule. Even if the fee schedule is itself unconstitutional. Well, there's been no challenge that the fee schedule itself is unconstitutional. Well, yes, there is. There's a challenge that it's based on a violation of equal protection and due process in establishing the fee schedule because of the failure to reexamine the geographic limitations. I think I'd like to break that down, Your Honor, if I could. The fee schedule is separate from the small fee schedule areas, which is just the geographic adjustment. And there's been no constitutional challenge to the fee schedule itself. They just challenge how the localities are figured by the agency. And all they have here is a unilateral expectation, at best, that they would like those to be reconfigured in some particular way. So that's not challenging? The fee schedule, when you challenge the geographical configuration, is unconstitutional. And that causes the improper fees. That's not a challenge to the fee schedule? It's one factor in that formula that they don't challenge the formula. So if they add it to their complaint, we challenge the failure to devise the geographical component or whatever geographical area in a constitutional manner and therefore challenge the fee schedule, that would be all right then? Then they would be challenging the fee schedule. I mean, I still don't see what property interests that they'd be identifying here that would give them any substance to their constitutional challenge. They voluntarily provide these services for the fee schedule. Well, that's what I said. No matter what you do with the fee schedule, it can't be challenged on constitutional grounds. It can't be challenged because there's no constitutional right, no matter what you do in establishing the fee schedule. If I'm understanding you correctly, Your Honor, I think we're on the same page here. But, I mean, in any case, the Court doesn't need to, I don't think, go that far, but to particularly they're challenging an amount above, to receive an amount above this fee schedule here, which is not a protected property interest. And so I think this Court can affirm the dismissal of the claims on that basis. All right. The Court has no further questions. We would ask this Court to adjourn. I have a question about the statutory bar of review. Counsel said that if you look at how the statute is laid out, in one instance you have on the relative value code that underlying that is a, I guess we'll call it a product or service, a provider code of some service that they're providing, and that both of those were barred, but in this situation the underlying components of the GAF weren't barred. What is your response to that? Your Honor, the payment is computed, payment under Medicare Part B is computed on three factors. The relative value, the conversion factor, and the geographic adjustment factor. Each of those specific items are barred under the no review provision in separately subparagraphs B, C, and D. So those just track exactly the payment. And then on top of that, they also barred the system of how, in paragraph E, I believe it is, of how the agency codes those services. Because with that whole system they set up of how they code each service that can be medically provided, that's a whole separate issue that they didn't want oversight of. But they're saying that that really is a subset because you need to know, you first have to categorize these things before you can then filter them through this equation. And why isn't the underlying locality similar to the service code? Because the relative value unit, relative value is determined for each service. So if they didn't, if Congress hadn't also provided a separate section specifically barring review of the whole system of the coding, it's not clear that that would have necessarily been included in subsection B, because that's just a determination per each service. Whereas D, subsection E encompassed bars review of that whole system of how they code, how they determine it, how they divvy up the specific services provided. Well, is it true the fee schedule is a component of the GAF schedule? That's correct, Your Honor. And you can't review the GAF. That's barred. And so it carries with it a bar of the fee schedule. That's correct. It's clear here that what plaintiffs are seeking is a monetary adjustment based on the locality, which is one of the only factor here that they're challenging that would adjust the payment is the geographic adjustment factor, since they're not challenging either of the other two components, relative value or the conversion factor. So if they're seeking an adjustment payment, they must be seeking to change the geographic adjustment factor, which the locality is part of that determination. And that's barred. If the Court has no further questions, we'll rest on our brief. Thank you, counsel. If Congress had intended to bar all review of every aspect of the fee schedule, they would have simply just said that. Well, they didn't have to if the effect was to do it the way they did it. You don't have to dot every I if the ultimate event is barred. With respect, Your Honor, the legislative history shows that in 1989, Congress was trying, was debating how to set up the localities. It shows it back and forth, back and forth. And on the whole, there's very little support. If we're ever going to dig into the legislative history, it's not much of an argument. Well, there was an express prohibition of the review of the locality structure that they took out. They may not have needed it. Okay. Well, I, we pointed out five instances in the Medicare Act where Congress has barred judicial review of geographic definitions that operate in a similar fashion as the one we're talking about here. We pointed out nine instances in the Medicare Act where Congress has barred all judicial review of any aspect of particular fees. And I just believe that if that had been Congress's intent, then they would have done so here. But I believe that because Congress deferred the definition of how localities would be defined until a later date, and the legislative history shows that. It shows that they expected to have that done by 1991. Because they deferred that, I believe they also deferred including a provision barring judicial review of the locality structure. So I would like to say, Your Honor, I would like to go back to the property interest and I would like to ask the Court if the Court has ever seen a case where the government has admitted that they are underpaying somebody something. And I ask, how can that not be a property right? How can there not be a property right? Well, you know, the answer to that is if the person being underpaid were here, we might have a problem. But you're not that person. The county is, though, Your Honor. I tried to explain that. The county is not being underpaid. The county is being underpaid. The county bills Medicare. Although the county might be being underpaid isn't the question. I go back to, you know, it's a choice of the county to take or not take the schedule. You know, you know. And that's where I'm having some problems. You sign up to what you sign up to as the county and you have the choice. And if you sign up to it, well, then that's what you get. I know, Your Honor. And I know that there's a 19th. That's where there's some problems. I know there's two different issues and two different people. I know. And I try to divide them and answer one, then the other, whichever order you would like. Judge Noonan is concerned about whether the county is a proper party that is being deprived of its rights. Judge McEwen is concerned about whether you have any, whatever, whoever the person is, has any rights to get more than a fee schedule. Let me start with Judge Noonan, then, because he came first. The ‑‑ I think if you review the complaint, Your Honor, you will see that we allege that it is the county that is being underpaid, the seven counties that are being underpaid. And so I think that from the procedural standpoint that we have here, that has to be taken as true. And so I think that's the best place to look. I'm sorry, I don't have a citation. You operate the hospitals? In clinics, yes. Not the doctors who have the right to this money? No. No, Your Honor. It is the county that's operating the hospitals. The hospitals have the claim. They're county hospitals? They're actually clinics, Your Honor. We have to have a doctor in there that can get the code that gets you the right. Yes. Whatever that may be. Whatever that may be, yes. Right. If you had a right under the fee schedule to get a certain amount, that amount would go to the county? Yes. And it would be your property? Yes. All right. Yes. Now, Judge Noonan's question. Those cases that talk about, you know, if you signed up for it and you don't have an expectation of anything other than what's published, those cases come from the And I respectfully believe that that is a very cavalier attitude that in this day and age is misplaced. I might agree with you if I were writing, got to write on a clean slate. Right. But what is happening? What is happening, Your Honor, is as our motion to expedite showed, a motion that, by the way, was not opposed on the merits by the government. It showed that the failure to pay a fair, not a fair, but an accurate rate in counties, in our counties, is leading, has led, to the inability of Medicare beneficiaries to get medical care. It's led to a health care crisis. Doctors cannot afford, doctors in Santa Cruz cannot afford to get paid 25 percent less than physicians. Well, why are they being paid less? I thought they were on salary from the county. The county. But I'm talking about other doctors, Your Honor, who are also being paid under Medicare, and the effect of forcing the doctors in these high-cost counties to take less than they should get has led to a Well, that's a different case. Why aren't there doctors here who say, look, we're going to stop providing Medicare services because we're getting, we can't afford to do it at this schedule, and the schedule is an improper schedule? We believe that they would come later. Well, why didn't they come now in your case? That's what we have here. Because we have seven counties. We believe that was enough. Well, you need a few doctors, too. We'll come back. But we believe that that was enough. But what I was So what are the efforts, as a practical matter, apart from this lawsuit, what's in the record about the effort to get HHS to take another look at these metropolitan areas? I have some specific paragraph citations. 174, 175, 178, 188, 191, 200, 202. Thank you. In 2001, the California Medical Association began meeting with Medicare and pointed out the California problem of underpayments in two counties, Sonoma and Santa Cruz. That's now up to 11 counties, by the way. In 2003, Medicare published a proposed rule asking for comments on the locality issue. They received numerous comments from around the country asking that particular counties be moved out of these multi-county localities. In 2004, the California Medical Association made two proposals to change the locality structure. Was that a rulemaking process or no? That was through the rulemaking process, yes. Would you have an opportunity administratively to challenge if it's through the rulemaking process? Well, they didn't do anything, so there was really nothing to challenge at that point. But did they have an obligation to do anything? I don't believe so, because what Medicare said was they were going to study it again and study it some more. So that kind of then plays back into this whole property interest thing. I mean, in other words, if there were a rulemaking and they had an obligation, then their failure to conclude the rulemaking may actually give you a claim, you know, through the APA. But if they didn't really have an obligation, we're kind of back to the property interest. Well, the ---- Or the potential lack of a property interest. Well, through the APA, we have several claims. We've said that the actions are arbitrary. We've said that it's taken them too long to do this and other things. But I think that if there was an obligation to challenge something in 2004, that merely becomes a statute of limitations issue perhaps, and that's not something that we're dealing with yet. But ---- Do you have any hope with the new administration? Pardon me? Is there any hope with the new administration? Your Honor, there's always hope. But I just ---- I mean, efforts are ---- the California Medical Association, I know, has continuously made efforts in Congress to try and get this changed. They've continually made efforts in the administrative agency to get it changed. And we simply see this as the last resort because nobody's doing anything. Everybody acknowledges the problem. But politically, I think, is we have the same problem as the agency does. It's ---- this is a budget-neutral system. So if they increase payments to doctors in Santa Cruz, they're going to decrease payments to doctors in counties like Alpine County. And in these paragraphs that I cited, you will see ---- It's possible. It's possible. It's, you know, full employment for ---- They have a property right to get what they thought they were going to get. It's possible. Full employment for judges is a good thing, I suppose. I see what a difficult political question this is. It's not very judicial. It is judicial, Your Honor. I'm saying that the ---- there's a political paralysis in the agency. They talk about ---- they say the reason that they're not doing anything is because of what they call the redistributive impact. In other words, they don't want to stop overpaying in order to properly pay those that they have been underpaying. And I ---- it boggles my mind, frankly. So. Okay. I appreciate the attention. I understand that this is a very complex issue, and I really do deeply appreciate the time that you've given me. I want to say, even though these statutes are totally amazed and opaque, I thought both parties' briefs laid out their positions. So I appreciate that. Thank you, Your Honor. Thank you. Thank you very much, all of you. The case, it's argued, will be submitted.
judges: Reinhardt, Noonan, McKeown, Cjj